UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY JAMES,

                Plaintiff,

    v.                                      **DECISION AND ORDER**
                                                     **03-CV-01281**

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## Introduction

1.    Plaintiff Jeffrey James challenges an Administrative Law Judge's ("ALJ") determination that he is neither entitled to disability insurance benefits ("DIB") nor eligible for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges he has been disabled since July 13, 2001, because of a torn medial lateral meniscus. He has met the insured status requirements of the Act at all times pertinent to his claim.

## Procedural History

2.    Plaintiff filed applications for DIB and SSI on August 3, 2001. His applications were denied initially and, under the prototype model of handling claims without requiring a reconsideration step, Plaintiff was permitted to appeal directly to the ALJ. See 65 Fed. Reg. 81553 (Dec. 26, 2000). Pursuant to Plaintiff's request, his first administrative hearing was held before ALJ Carl E. Stephan on January 28, 2003, at which time Plaintiff and his attorney appeared. After additional evidence was obtained, Plaintiff and his attorney appeared at a second hearing on May 8, 2003. The ALJ considered

1

the case *de novo*, and on May 29, 2003, issued a decision finding that the Plaintiff was not disabled during the relevant time period. On September 26, 2003, the Appeals Council denied Plaintiff's request for review.

3. On October 23, 2003, Plaintiff filed a Northern District form Civil Complaint requesting judicial review the decision of the Commissioner pursuant to Section 405(g) of Title 42 U.S.C., and such relief as might be proper, including costs.[1] The Defendant filed an answer to Plaintiff's complaint on December 18, 2003, requesting that the Court dismiss Plaintiff's complaint. Plaintiff submitted Plaintiff's Brief on January 13, 2004. On February 9, 2004, Defendant filed a Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[2] After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

## Discussion

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.

---

[1] The ALJ's January 25, 2005 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although Defendant has characterized her Memorandum of Law as a "Motion for Judgment on the Pleadings," (Docket No. 7), neither the Defendant nor the Plaintiff appear to have filed such a motion and there is no evidence in the Docket of any such motions having been filed. Nevertheless, the Court will "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." See 42 U.S.C. 405(g).

See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

     5.    "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

    6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

    7.    This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activeties.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

    8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the

Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff has met the insured status of the Act at all times pertinent to this claim (R. at 16);[3] (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (R. at 16); (3) Plaintiff has a severe musculoskeletal impairment which does not meet or equal the level of severity of any impairment listed in Appendix 1, Subpart P of Social Security Regulations No. 4 (R. at 16); (4) Plaintiff is unable to perform his past relevant work (R. at 16);  (5)  Plaintiff retained the residual functional capacity to perform sedentary work activity that allows him to change positions frequently, extend his left leg partially while sitting, does not involve climbing, crawling, crouching, kneeling, balancing, driving, pushing or pulling with the lower extremities, or exposure to damp or cold environments.  Further, such work exists in significant numbers in the national economy (R. at 16); (6) The ALJ certifies there is sufficient evidence to support the findings regarding Plaintiff's residual functional capacity at step five of the sequential evaluation, and that evidence can be found in Exhibits 1F through 5F, 8F, 9F, 10F, and

---

[3] Citations to the underlying administrative record are designated as "R."

5

13F (R. at 16); (7) At the date of the hearing, Plaintiff was 35 years old, had two years of college education, and skilled work experience (R. at 16); and (8) Rule 201.28 of Appendix 2, Subpart P of Social Security Regulations No. 4 provides a framework requiring a finding of "not disabled" (R. at 16). Ultimately, the ALJ determined Plaintiff was not under a disability, as defined by the Act, at any time between his alleged onset of disability date of July 13, 2001, through the date of his hearing before the ALJ on May 8, 2003 (R. at 17-18).

10.     Plaintiff advances a number of challenges to the ALJ's decision. First, Plaintiff argues that the Commissioner did not meet her burden of proof to demonstrate, by substantial evidence, that Plaintiff could perform alternative work in the national economy once the ALJ determined Plaintiff could not return to his past relevant work.  Plaintiff points out in his Plaintiff's Brief of January 9, 2004, (Docket No. 5), that the ALJ did not cite specific medical evidence that Plaintiff could perform each element of sedentary work. See White v. Secretary, 910 F.2d 64, 66 (2d Cir. 1990).  Specifically, Plaintiff argued that no physician stated he could sit for at least six hours, and stand and walk for at least two hours, in an eight-hour workday.  Further, Plaintiff alleges that although the ALJ arranged for an examination of Plaintiff by a medical consultant, the ALJ ignored several critical limitations assessed by the medical consultant that would impact Plaintiff's ability to perform sedentary work that exists in substantial numbers in the national economy.

Plaintiff is correct in noting the full range of sedentary work requires that an individual be able to stand and walk for approximately two hours in an eight hour workday, and remain seated for approximately six hours in an eight-hour workday, with a morning break, a lunch period, and an afternoon break at approximately two-hour intervals.  See SSR 96-p.  Any significant inability to stand or sit for the required periods to perform the full range of sedentary work will erode the sedentary occupational base.  Id.  The full range of sedentary work also requires that an individual be able to lift no more than 10 pounds at a time, and occasionally lift or carry items such as docket files, ledgers, or small tools.  Id.  Again, any significant inability to perform these lifting or carrying tasks will erode the sedentary occupational base.  In this case, the ALJ found Plaintiff could perform a *limited* range, rather than a full range, of sedentary work, and with the assistance of a vocational expert, determined numerous employment opportunities for an individual with Plaintiff's limitations (R. at 16).  Such a finding is appropriate when a significant number of jobs exist in the national economy that an individual would be able to perform given his or her age and education, and his or her exertional and non-exertional limitations.  See SSR 96-p.

While Plaintiff alleges no substantial evidence exists to support the ALJ's residual functional capacity determination, a review of the ALJ's decision and record shows the ALJ gave careful consideration to Plaintiff's medical evidence, testimony, and activities of daily living (R. 11-17, 20-38, 42-65, 130-148, 152-240).  As an example, the ALJ found Plaintiff could perform

sedentary work that would allow him to change positions frequently, extend his leg partially while sitting, and avoid any work that would involve climbing, crawling, crouching, kneeling, balancing, driving, pushing or pulling with the lower extremities, or exposure to damp or cold environments (R. at 16). These limitations on Plaintiff's residual functional capacity are supported by the medical records and opinions of Plaintiff's treating physicians, Doctors Bannon, D'Ascoli, and Silver, consultative examiner, Dr. Jorgensen, and State agency physician, Dr. Auerbach.  Treating physician Dr. Bannon, who originally diagnosed Plaintiff's torn lateral meniscus of his left knee, performed Plaintiff's first arthroscopic procedure in August 2000 and continued his follow-up medical care through July 13, 2001 (R. 157-170).  Based on his diagnosis and treatment of Plaintiff, Dr. Bannon assessed him as having the physical abilities to perform the full range of sedentary work on October 4, 2002 (R. at 191-193).  Treating physician Dr. D'Ascoli performed a second arthroscopic surgery on Plaintiff's left knee on September 27, 2001 (R. at 194-95).  The doctor found Plaintiff tolerated the procedure well, and follow-up notes from December 4, 2001, and January 14, 2002, showed Plaintiff "doing better," "not using crutches," "using his ACL brace," and noting "most of his problems now are with the deconditioning" (R. at 199).  On March 22, 2002, Plaintiff was again seen by Dr. D'Ascoli, who noted he had "a little effusion" in his left knee, but otherwise had a "fairly unremarkable exam" (R. at 200). The doctor advised Plaintiff to limit his walking, ride a stationary bicycle until he could ride for one-half hour, and do more weight-lifting until he

8

could lift 20 pounds. Id. The doctor requested to see Plaintiff again in three to four months, but the date stamp from the doctor's follow-up record of August 2002 reveals Plaintiff was a "no show." Id. Treating physician Dr. Silver performed a third arthroscopic surgery on Plaintiff's left knee on May 15, 2002 (R. 205). Dr. Silver noted Plaintiff was healing well and had no evidence of infection. Id. He recommended Plaintiff follow a non-weight bearing exercise program for several weeks, and then move to a weight bearing program. Id. It is significant to note in a follow-up visit on July 31, 2002, that Dr. Silver records Plaintiff "did indeed lie to me when previously asked about any prior knee surgeries," and "after his previous arthroscopy [Plaintiff] was told that there was a lot of cartilage loss and there was not much else that could be done for his knee" (R. at 204). During that same visit, the doctor noted no effusion of Plaintiff's knee, a full active range of motion, and no catching or locking. Id. Dr. Silver recommended Plaintiff continue with activities at home as tolerated, along with a home exercise program. Id. Plaintiff's last reported visit with Dr. Silver was July 31, 2002.

Plaintiff was examined by consultative examiner Dr. Jorgensen on October 16, 2001 at the request of the Commissioner (R. at 172-73). The doctor diagnosed Plaintiff's chronic knee pain from attributable to a significant meniscus tear, but noted no additional damage, no evidence of ligamentous injury, and no nerve damage to the area (R. at 173). Dr. Jorgensen noted Plaintiff's pain with flexion of the knee, but opined there was "no true instability or particular precipitation of pain during these maneuvers." Id.

While the doctor noted Plaintiff would likely be limited in performing his previous job as a Service Writer for an automobile dealership, he assessed Plaintiff as capable of walking to and from an office setting where he could perform work requiring standing for less than 10 minutes at a time, limited bending and lifting, and unlimited pulling and reaching.  Id.

Plaintiff's medical evidence was reviewed by State agency physician Dr. Auerbach on December 7, 2001.  While Dr. Auerbach did not physically examine Plaintiff, as a State agency physician he is deemed highly qualified in the evaluation of disability claims under the Act.  See C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p.  Dr. Auerbach agreed with Dr. Jorgensen that Plaintiff's ability to bend and lift was limited, but assessed Plaintiff as capable of performing sedentary work (R. at 180, 188).

Plaintiff was examined by consultative examiner Dr. Welch on February 27, 2003, at the request of the Commissioner (R. at 225-31).  The doctor noted Plaintiff's injury and surgeries to his left hand that occurred in 1995, as well as the problems with his left knee (R. at 225).  Dr. Welch found Plaintiff's strength in his left thumb and index finger was 3.5 out of 5, and he had a reduced range of motion.  Id.  Although Plaintiff is right-hand dominant, the doctor opined Plaintiff would have some restriction of his ability to push, pull, manipulate objects weighing more than 10 pounds, and do repetitive finger activities with his left hand.  Id.  With respect to Plaintiff's knee, Dr. Welch noted his pain and significant limp, but found Plaintiff's ligaments intact with no instability (R. at 226).  The doctor assessed Plaintiff as capable of

performing a very sedentary job in a largely sitting position, with the opportunity to keep his left leg partially extended, and with the ability to change position frequently (R. at 227).  The doctor further restricted Plaintiff from working in cold and damp environments, and limited his ambulation to getting to, from, and around the worksite.  Id.  Dr. Welch completed a Medical Source Statement Of Ability To Do Work-Related Activities and opined Plaintiff could lift ten to twenty pounds while sitting, but could not carry more than ten pounds (R. at 228).  The doctor assessed Plaintiff could stand and/or walk for one hour per day, and could sit for less than six hours as he would need to change positions frequently.  Id.  He found Plaintiff could push and/or pull twenty pounds with his right hand and ten pounds with his left hand (R. at 229).  However, he also noted Plaintiff could only occasionally handle and finger with his left hand (R. at 230).  Dr. Welch opined Plaintiff could not push or pull with his lower extremities, and should never climb, kneel, crouch, crawl, or stoop (R. at 229).  The doctor suggested Plaintiff should avoid temperature extremes, vibrations, humidity and wetness, and workplace hazards such as machinery and heights (R. at 231).

   At the request of Plaintiff's attorney, Dr. D'Ascoli reviewed Dr. Welch's medical assessment of Plaintiff on or about April 24, 2003 (R. at 234).  Dr. D'Ascoli agreed with Dr. Welch's report regarding Plaintiff's lower extremities, but could not comment on Plaintiff's hand problem as he had never treated him for the problem (R. at 233).

A review of the record shows the ALJ carefully considered the medical evidence proffered by Plaintiff's treating physicians, consultative examiners, and State agency physicians in making his determination that Plaintiff retained the residual functional capacity to perform less than a full range of sedentary work. In a Medical Source Statement Of Ability To Do Work-Related Activities, treating physician Dr. Bannon assessed Plaintiff as capable of performing sedentary work (R. at 191-193). State agency physician Dr. Auerbach also opined Plaintiff was capable of performing sedentary work (R. at 180). Consultative examiner Dr. Jorgensen assessed Plaintiff as able to work in an office setting, but with limited walking, standing, bending and lifting (R. at 173). While consultative examiner Dr. Welch opined Plaintiff was capable of performing a "very sedentary job" consistent with a residual functional capacity for less than a full range of sedentary work, the doctor's report suggested restrictions on Plaintiff's ability to use his left hand R. at 227, 228-231). Dr. Welch's opinion concerning Plaintiff's left hand was considered by the ALJ, but the doctor's opinion was inconsistent with Plaintiff's other medical evidence pertaining to the time frame for this DIB and SSI claim. Treating physician Dr. D'Ascoli agreed with Dr. Welch's assessment of Plaintiff's limitations except those of Plaintiff's left hand (R. at 233).

This Court finds after careful review of Plaintiff's medical evidence, the ALJ properly concluded that, because of the severe impairment of his left knee, Plaintiff could not return to his past relevant work as a Service Writer;

however, Plaintiff retained the residual functional capacity to perform less than the full range of sedentary work. Further, as discussed in section 11 below, the ALJ engaged the services of a vocational expert to assist with identifying jobs that exist in significant numbers in the national and local economy that Plaintiff could perform despite his physical limitations, thus satisfying the Commissioner's burden in step five of the sequential process.

11. Plaintiff's second claim is that the ALJ committed reversible error by relying upon the opinion of a vocational expert based on a defective hypothetical question. Plaintiff notes it has been held in the Second Circuit that to be valid, a hypothetical question for a vocational expert must include all of the claimant's impairments. See DeLeon v. Secretary, 734 F.2d 930, 936 (2d Cir. 1984). Further, when a hypothetical question accurately reflects a claimant's limitations, the Commissioner is bound by the answer of a vocational expert. See Odierno v. Bowen, 655 F. Supp. 173, 183 (S.D.N.Y. 1987). Plaintiff claims that by failing to include the restrictions placed on him by Dr. Welch concerning his ability to stand, sit, and use his left hand for repetitive motions, the ALJ's hypothetical worker, and the vocational expert's assessment of available jobs, were fatally defective in providing guidance as to whether suitable jobs in the national and local economy were available to Plaintiff.

As discussed in section 10 above, the ALJ carefully considered the medical opinions of Plaintiff's treating physicians, consulting examiners, and State agency physicians. The ALJ found Plaintiff had significant limitations in

his residual functional capacity caused by the problems with his left knee. However, while one of Plaintiff's treating physicians reported Plaintiff complained of pain in his right thumb on June 27, 2000, the physician found no instability, minimal swelling, and full flexion and extension (R. at 169). Only one physician diagnosed a problem with Plaintiff's left hand and thumb at any time within the relevant time frame for Plaintiff's claim for DIB and SSI benefits (R. at 225). The ALJ considered the doctor's report, the time elapsed between Plaintiff's surgery on his left thumb in 1995 and any reported problem with his left hand or thumb, and Plaintiff's work history, to determine Plaintiff did not establish a left-hand impairment that would interfere in any more than a minimal way with his ability to perform work-related activities (R. at 12).

In his hypothetical question to the vocational expert, the ALJ presented Plaintiff's limitations as he determined them from the record. The ALJ was not required to add additional limitations to his hypothetical question if he did not find such limitations in Plaintiff's medical or other evidence. See Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983). The vocational expert considered Plaintiff's age, education, past relevant employment, and his limitations as presented by the ALJ, and assessed that there were a significant number of sedentary jobs in the national and local economy that Plaintiff could perform (R. at 25-33).

This Court finds no reversible error in the ALJ's assessment of Plaintiff's limitations in his ability to do work-related activities, or in his

presentation of Plaintiff's limitations in his hypothetical question to the vocational expert. Further, this Court finds the Commissioner has met her burden in step five of the sequential evaluation by presenting to Plaintiff a significant number of jobs in the national and local economy he could perform despite his severe impairment.

12. Plaintiff's third claim is that the ALJ did not properly consider Plaintiff's pain and the limitations caused by his pain. Plaintiff notes that courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir. 1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y. 1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529 (b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995). In this case, there is no question Plaintiff's left-knee problem is a severe impairment, but his reported symptoms suggest a greater restriction of function than would be indicated by the medical evidence in the record. Thus, the ALJ considered Plaintiff's daily activities, the type and nature of the symptoms reported, the

medication and other treatment Plaintiff used to alleviate his symptoms, and any other measures he used to relieve pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p.  The ALJ's decision shows he reviewed Plaintiff's complaints of pain and other symptoms, but found the medical and other evidence did not corroborate Plaintiff's claim of disabling pain (R. at 14).  While Plaintiff's treating physicians noted his complaints of pain, each opined he was better after surgery and both could and should engage in a therapeutic exercise program to improve his left knee function (R. at 167, 198-200, 204-205).  Only Dr. Bannon recommended cortisone and synvisc injections for Plaintiff's pain during the time period from October 2000 through December 2000 (R. at 160-165).  The records of Plaintiff's other treating physicians are silent on any aggressive measures taken to control pain (R. at 198-200, 204-205).  When questioned by the ALJ about how he relieved his reported pain symptoms, Plaintiff stated he used aspirin and a heating pad (R. at 14, 52).  The ALJ examined Plaintiff's activities of daily living and found he cared for his three year-old child, tidied up the living room and kitchen, watched television, went to the grocery store about once a week, and read the newspaper (R. at 14, 54). Plaintiff stated he used the computer, loved to walk,[4] built model cars as a hobby, and draw (R. at 56-57).  He was able to drive an automobile for up to one-half hour at a time, and drove approximately three times per week (R. at 44).  The evidence proffered by Plaintiff of his doctor-recommended pain treatment, his self-administered pain

---

[4] When asked by the ALJ "Do you have any hobbies[?]," Plaintiff's answer was "I love to walk." The ALJ then asked "That you still can do[?]"  The petitioner answered "Oh, that I can."

16

treatment, and his self-reported activities of daily living showed Plaintiff capable of engaging in many varied daily activities despite of his complaints of pain. Such evidence is inconsistent with pain of disabling intensity. See Rivera v. Harris, 623 F.3d 212, 216 (2d Cir. 1980). Thus, it was reasonable for the ALJ to find Plaintiff's allegations of pain and subjective symptomatology inconsistent with pain of such intensity that he would be unable to engage in any physical activity, including sedentary work of a limited nature (R. at 14-15).

In sum, this Court finds the ALJ properly considered Plaintiff's pain and symptomatology, along with the medical and other evidence in the record, and the totality of evidence does not substantiate Plaintiff's claim that his pain and other symptoms were disabling. Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, present an explicit summary of his evaluation, and render an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (R. at 13-15). See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir. 1984).

13.    Plaintiff's fourth claim is that this case should be remanded for calculation of DIB and SSI benefits. As discussed in Section 10 above, the ALJ examined the medical and other evidence proffered by Plaintiff and found Plaintiff could not perform his past relevant work, but retained the residual functional capacity to perform less than the full range of sedentary work. The ALJ engaged the services of a vocational expert to determine a significant

number of jobs existed in the national and local economy that Plaintiff could perform despite his severe left knee impairment.  As discussed in Section 11, the ALJ assessed Plaintiff's severe impairment, and the limitations to Plaintiff's work-related capabilities caused by his impairment, and presented this information to the vocational expert in the hypothetical question about jobs that would typically be available in the national and local economy to someone with Plaintiff's limitations.  As discussed in Section 12, the ALJ analyzed Plaintiff's pain and symptomatology testimony, along with medical and other evidence, and found Plaintiff's claim of pain, and other symptoms so disabling that he was unable to engage in any work-related activities unpersuasive*.*

      This Court finds the ALJ based his decision that Plaintiff was not disabled within the meaning of the applicable Codes during the relevant period of this claim on the substantial evidence presented in the record.  Thus, a remand to the Commissioner for calculation of benefits, or a remand for development of further evidence, is not appropriate.

## Conclusion

14.    After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and Plaintiff's testimony regarding his symptoms and complaints.  It is clear to this Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians, consultative examiners, and State agency

physicians, and afforded Plaintiff's subjective claims of pain and other symptoms an appropriate weight when rendering his decision that Plaintiff is not disabled.  This Court finds no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will, upon the pleadings and transcript of the record, affirm the decision of the ALJ under the substantial evidence rule, grant judgment to the Defendant, and order that the Plaintiff's case be dismissed.  Accordingly,

IT IS HEREBY ORDERED, that the decision of the ALJ is AFFIRMED and judgment for the Defendant is GRANTED.

FURTHER, that Plaintiff's case is DISMISSED, and

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: March 28, 2007,
       Syracuse, New York

_____
Victor E. Bianchini
United States Magistrate Judge